Good morning, your honors. I'm John Ogun for the Suquamish Tribe. I'd like to reserve three minutes for rebuttal. May it please the court. I provided the panel with copies of a map. It's the same map that opposing counsel have placed up here on the board. This map was submitted to Judge Bolt by the Suquamish Tribe on April 2nd, 1975, prior to his hearings conducted on April 9th, 10th, and 11th. Judge Bolt had directed the Suquamish Tribe to advise him of what they claimed as their usual and accustomed fishing grounds. He directed them to do so at an initial order of March 28th, 1975. Judge Bolt relied upon this map extensively during two of the three days of his proceeding. The map shows four sub areas and I'd like the panel to focus your attention on Area 3. Area 3 includes what are the contested waters here. I know you've all studied the district court opinion fully and might recall that Judge Martinez refers to Area 3 of this map several times and he reached the conclusion, his opinion, that there was nothing in the record of the 1975 Judge Bolt proceedings indicating that Judge Bolt intended the waters there in Area 3 to be part of what he described as the marine waters of the the marine usually custom fishing areas of the Suquamish Tribe. A moment about the applicable law before I turn to the heirs of the district court. All parties and the court agree that the contested it is not ambiguous, not ambiguous, that the contested waters are part of the marine waters of Puget Sound described by Judge Bolt in his description of the Suquamish UNA. So part one of the Muckleshoot analysis is resolved in the Suquamish's favor. Part two then, because it's not ambiguous, places the burden on the Upper Skagit Tribe to demonstrate that Judge Bolt meant something, intended something, other than what he actually said. The burden is on the Upper Skagit Tribe to demonstrate there's nothing in the record of the 1975 proceedings to support the proposition that Judge Bolt could have intended to include the contested waters here in what he described as the marine waters of Puget Sound. Now to the heirs of the district court. Your Honor, please refer to the map again and again to Area 3. As you look at Area 3, there is a left of three that oriented in a south east to northwest direction. That's Lummi Island. There's a body of water that divides Lummi Island from the mainland to the north known as Hale Passage. Hale Passage is important. Judge Bolt made a finding in his April 18th order specifically related to Hale Passage and it demonstrates that he intended Hale Passage there in Area 3 to be Suquamish UNA. First, in Finding of Fact 7, and again this is that the appellant's excerpts of record page 26, Judge Bolt states that there was treaty time fishing and use of Hale Passage by several Indian tribes. In the finding, he then goes on to note that the Lummi, Suquamish, and Nooksack tribes had all reached an agreement about their primary and secondary fishing rights in that Hale Passage water. Judge Bolt did not disturb that. Judge Bolt's endorsement of the primary and secondary rights agreement among these three tribes proves he understood that Hale Passage was Suquamish UNA. Here's the important point and why. There is no primary and secondary fishing right relationship between two tribes unless each of them have the predicate underlying rights to begin with to a shared area. You can't have a tribe that's first in line and one that's second to a fishing area unless they both have... So let me just stop so we can understand Hale Passage. Yes. So there, they were talking about the herring fishery is that right? That's absolutely right. Okay so talking about the herring fishery up in Hale Passage and Judge Bolt is talking about an agreement, a private agreement among or between tribes. Correct. And does he go on in that passage to mention these tribes? He does go on in that passage. There was a fourth tribe mentioned that would not enter into a voluntary agreement or had not worked things out in advance of the herring and that was with respect to the Swinomish tribe. And Judge Bolt then because they did not work out the primary and secondary relationship ruled in finding a fact seven, found that Swinomish was secondary to Lummi. So he talks about this private agreement but do we have anything after that that says that this kind of evidence is somehow conclusive or qualifies to establish the UNA, the broader construct? So Your Honor, I understand your question to be so what is the record and what do we have, what does it suggest that this is a piece of evidence but my question is whether if this is the primary piece of evidence or can this evidence alone establish a UNA for your tribe? Your Honor, we believe that the Muckleshoot analysis has us looking into the intent of Judge Bolt. What did he intend? And if we understand that the Hale Passage agreement and his endorsement of it necessarily included a predicate that there was UNA there. He can't endorse a primary and secondary relationship without his first understanding and intention that there be a fishing area that's shared between the two tribes to begin with. So under the Muckleshoot test we're not trying to re-litigate the evidence that was offered in front of Judge Bolt. We're not necessarily having to go behind the order. That would be as if we're trying to establish UNA in the first instance. Under the Muckleshoot test and a case here where 40 years later we're trying to define the intent of Judge Bolt. We must look at the entirety of the record. So just so I understand your point, you're saying that he couldn't have made this finding without a predicate of the broader UNA. That's absolutely right, Your Honor. I understand your point. Thank you. Next. Is that implicit or implicit? Ian, as the finding is written, to be fair, Your Honor, I believe that it's implicit. But subsequently this court has found it and characterized it as explicit. And I would refer you to, we didn't cite this case, but you've raised the question, 764 F. Second 670. And that's a 1985 case, United States v. Skokomish, where this that court goes on to reference, as an example, the Hale Passage finding I'm talking about now. So that would be some good authority where I think this court has subsequently referred to the Hale Passage finding as an explicit finding from Judge Bolt that there was usually a custom fishing area shared. To determine what Judge Bolt meant in this regard, we have to look to a decision after the original Judge Bolt decree. No, Your Honor, I did not intend my answer to indicate that. I believe that a fair reading of Finding of Fact 7, and you asked if it was explicit or implicit about his finding of UNA there, I believe it's implicit. Implicit at the time, made explicit over time. That's correct, Your Honor. Thank you. Your Honor, the next piece of the record evidence that I think the district court, we think the district court, got badly wrong, relates to testimony that was offered by Dr. Barbara Lane on April 9th, 1979. Can I just go back? Oh, yes. I'm just trying to look at the briefs here, and you didn't cite the Skokomish case, is that right? No, I indicated that we had not, but the question that was offered. Well, I understand, but it almost seems like that's fundamental to your argument now as to whether the Hale Passage statement could qualify for the I didn't see it cited before, is that you provide the court with a 28-J letter on that, and the other side would have an opportunity to provide any other authority or comment in a letter. Very, very well. Appreciate that opportunity. I was referring to testimony provided by Dr. Barbara Lane on April 9th, 1975, and the district court misconstrues and truncates this testimony badly. At the of the hearing on April 9th, the state's attorney was trying to get Barbara Lane to testify to the notion that it would be usual for tribes to exclude, local tribes to exclude, tribes visiting from other areas from fishing in bodies of water or areas. Dr. Lane was resisting that sort of testimony. It was not her expert opinion that that was the custom. So, I'm going to step through that testimony that the district court made much of. Under cross-examination by the testified by way of example that, and this is, I'm going to quote it, it would not be customary for Suquamish to travel all the way into Bellingham Bay to get the herring spawning right inside where the Lummi lived. All the way into and right inside, spawning right inside where the Lummi lived. Now, your honors, the Dr. Lane was not testifying that Suquamish did not use Bellingham Bay or nearby waters. She was speaking of the custom of how proximate to local tribal villages or homes, other tribes from outside of the immediate area would or would not go to fish. Now, just prior to these comments, Dr. Lane was struggling to get the state council to understand and she put it this way. She tried to make the point by saying, and I'm quote, if you and I are neighbors and we own property along a river, we should pick the flowers right in front of another's home or property. And that's at ER 815. So she's trying to make the point that when there's a common fishing area, the custom of the time was not to go access the fish or the resources right in front of homes and villages. And the contested waters an issue here. The areas, the waters in Area 3 here are vast and open marine areas commonly used by many tribes. The last critical point... The other, when you look through the report for any geographic references, other than this one reference about not going all the way into Bellingham Bay, the only other geographic references appear to be pretty far south, which is down here, you know, more towards Seattle in the Duwamish or in the Snohomish Rivers. Is there any other geographic reference we should look to? Barbara Lane testified in a report that Judge Bolt referred to in his March 28th order that the Puget... excuse me, the Suquamish tribe traveled broadly over across Upper Puget Sound. She also testified, and the district court acknowledged, that she testified that they moved north from their homeland to the Fraser River in Canada, which is over a hundred nautical miles. She testified in her report that the Suquamish were unique among the Puget Sound tribes in the vastness of their marine travel because they lacked specific resources and rivers at their homeland. They had to travel broadly. They were known as wide travelers. In the hearing of April 9th, the reason that there is so little testimony about this area, it has to do with the unique emergency nature of the proceeding that Judge Bolt held about the herring fishery. See, Judge Bolt made a prima facie determination on April 9th, and he declared it from the bench, and we briefed this, that this map constituted the UNA of the Suquamish tribe for the herring fishery. The state insisted on an opportunity to rebut some of the areas, and the state limited its rebuttal to areas 1 and 2. So in this emergency expedited hearing that Judge Bolt describes, the state goes on looking at this very map and starts to attack Suquamish's claim with respect to areas 1 and 2. They concede areas 3 and 4, your honors, at the hearing. And so, and redirect, counsel for Suquamish is eliciting testimony about areas 1 and 2. There has been no challenge to area 3. I just have one other question. I know you want to save some time, but then I'm looking at this other reference in Tulalip tribes where they talk about Suquamish going from Vashon up to Fraser River, but traveling west of Whidbey Island, which would seem not to be at all in this, I guess we're calling the disputed area. Correct. So what are we supposed to make of that? That's a fairly specific reference. I think that is a fantastic case to look to as guidance here, because in that case, in Tulalip versus Suquamish, although there was no specific evidence naming waters like Admiralty Bay, Cutlass Bay, Useless Bay, Mutiny Bay, there was no evidence suggested there for those bays and coves along Whidbey Island, this court found that it was reasonable to conclude that because of the northward travel of the Suquamish to the Fraser River, they would have traveled along that path. And Dr. Lane had previously provided general evidence. That path being west of Whidbey Island. Yes, west. And there is also waters found on the east as well. But as I was mentioning about Hale Passage, Dr. Lane testified that Hale Passage was a customary travel route for tribes moving from the south to the north to Fraser River. Thank you. Your Honor, I'd like to reserve the balance of my time. He's much taller than I was. May it please the Court, David Hawkins on behalf of the Upper Skagit Indian Tribe. And for the record, can we assume that you and I are not related? That would be correct, Your Honor. Go right ahead. And we have listed here that Ms. Rasmussen will be speaking for three minutes. We have reserved three minutes for Ms. Rasmussen to primarily address the issue of travel in this case. There are three main reasons why the decision below should be affirmed. One, in 1975 the Suquamish Tribe failed to carry their burden as it This is area three on the map? Your Honor, the disputed area is encompassed in area three, but it is a very small portion of area three. That's important for many reasons. But yes, it is included within area three. Three, the Suquamish attempt to expand the record based upon reason relating to their contemporary efforts and adjacency. This simply is not what is at issue before this Court. It is not what the lower court was to make its determination on, and it does not relate to whether or not they customarily fished at or before treaty times, which is the standard for establishing a UNA. In 1975, during the hearing that we just discussed or heard Ms. Ogden discuss, if you review the utter absence of any information placing the Suquamish Tribe in the disputed area, the standard is not relating to contemporary evidence of their activities. The standard is not what a map might relate to. The standard is whether or not there is any evidence in the record demonstrating whether they customarily fished in the disputed area at or before treaty times. There isn't. So would you address at least one of the points they talk about, which is the Hale Passage reference about Indian Tribes generally traveling and fishing there? And then also in her report, Dr. Lane makes the statement that the Suquamish actually traveled widely, including the Rosario, I can't remember if she said Rosario Strait area, which is or is adjacent to the disputed water. So there's two geographic references I'm interested in your comments on. Your Honor, I would like to be clear that there is no adjacency rule in U.S. v. Washington. There is nothing through the cases that you can review that establish that mere adjacency established UNA. Were that to be the case, you would have a domino effect here that you would not want to entertain. Okay. As it relates to Hale's Passage, however, it is interesting to note what the record actually reflects. If you look at the record, Dr. Barbara Lane specifically says what happened at or before treaty times and who was there. The only tribe that she places in Hale's Passage is Lummi at or before treaty times. This notion that because there was an agreement amongst three tribes in 1975, that that has any import as to what occurred in 1855 is misplaced. It's akin to what they've done by submitting the regulations. They don't have the facts, so they rely upon reason. They submit regulations asserting that in 1975 they had a specific intent to fish and that because they had an intention to fish, that somehow gives them a right to fish. But even in their own pleadings in 054 or 053, I'm sorry, they have stated that Hale's Passage cannot be relied upon to establish UNAs. Therefore, the reliance on contemporary evidence is simply misplaced. If you look again at what Dr. Barbara Lane did state, we can go more than just proving that there's no evidence in the record. We can establish that the record excludes them from the area. Her testimony pertaining to Bellingham Bay is significant. Without being able to cross Bellingham Bay, Council of Record has stated that they would not be able to have access to disputed areas here. When Dr. Barbara Lane specifically states that they did not fish in Bellingham Bay, we have proved without a question, but that they were not there at or before treaty times. It's also important to keep in mind why there was no discussion about Area 3. At the time that Dr. Barbara Lane was being questioned by Mr. Stang, the testimony related to Areas 1 and 2. The direct testimony focused solely on Areas 1 and 2. When the state then gets up to cross, their cross is limited to what the direct testimony was. They had no obligation to proffer evidence pertaining to Area 3. So the state questions about Areas 1 and 2. Again, it was Squamish's burden to establish where they were in 1855, not the state's burden to establish that they weren't there. And it certainly isn't Upper Skagit's burden to establish that they weren't there. It's Upper Skagit's burden to establish what's in the record. And when you look at the record, it's clear were not in the disputed area at or before treaty times. I would also like to address this notion that because Upper Skagit did not object during the hearing that we somehow acquiesced to the finding that they're trying to assert applies here. Upper Skagit in 1975, you will note in the record, withdrew from the proceedings. In 1975, Upper Skagit had not yet established its UNA. Therefore, the issue was not one for which they had standing to participate in. Their failure to object, which council places great significance on, really is without merit because we didn't have a basis to object. So let's go back and see where we are. What is the evidence that's in the record? The specific evidence, which is what you are required and limited to look at according to the Muggleshoot Trilogy. The evidence in the record is silent as to Suquamish in the disputed area. So what does council attempt to do? They can't attempt to argue adjacency and contemporary efforts equate to what they did in 1855. That simply is not the case here. We have a very straightforward proceeding. We're fortunate that we have the case law that we have here and the law of this case. It's important to adhere to that. Opening up a record to allow inferences by lower level judges based on information that do not relate to what the actual standard is, is a very dangerous proposition. As this panel is well aware, this case has been going on for a very long time and there are a number of issues and efforts by other UNAs. However, the Muggleshoot standard is adequately phrased to limit those efforts and they are to be limited by what the record submitted by Judge Bolt was as it relates to the activities of those tribes at or before treaty times. The district court's decision below should be affirmed. This has been a small area of little significance to many people, I guess is the way I would put it. The reality couldn't be farther from the truth. This area represents over 50% of the upper Skagit's UNA. It assists over 30 family members. It allows them to exercise perhaps one of the most significant things that tribal members can exercise, that being their treaty rights. This notion that Suquamish should be able to come in to an area for which they have not fished or established that they fished for over 40 years. And I would call the court's attention to those regulations and to the catch reports which they rely upon as it relates to that. Because those catch reports don't document 40 years of effort in the 21B encompasses the disputed area but it is not limited to the disputed area. So those landings do not establish that Suquamish has been fishing here for 40 years. Also, if you look at that information closely, you'll see that those are duplicative. Even if they had been fishing for the past 40 years in the disputed area, that again is not what is at issue before this court. What is at issue is what they customarily, whether they customarily fished at or before treaty times in the disputed area. That was their burden to carry in 1975. They failed to do it. It makes our burden quite honestly much easier in this proceeding. The district court found in 05-3 that there is no evidence in the record before Judge Bolt that the Suquamish fished or traveled in the Island, particularly Saratoga Passage or Skagit Bay. I would also include that the same reasoning applies to disputed areas here. Let's look at what the actual language of Judge Bolt was when he rendered his decision from the bench. At the conclusion of the hearing, Judge Bolt specifically announced his areas 1 and 2. By clear implication, the Suquamish had not made a primary facia showing as to area 3, which is where the disputed areas are located. At ER 891-92, Judge Bolt states, A primary facia showing has been made that travel and fishing of the Suquamish tribe through the North Sound areas, that areas 1 and 2, as designated by the state. Nothing in regards to area 3, and yet this map was before him. He could have referenced area 3, but there was nothing in the record to allow him to do so. Counsel did not present any evidence that they were there. All of the 1975 relates to Birch Bay and to Simiamu. This is an area in area 2. There is absolutely no information that they have relating to area 3. The specific information that Dr. Barbara Lane does provide, however, over 20 references in fact, place the Suquamish tribe on the western side of Puget Sound. She is very accurate in her depictions as to where they were on the western side. Not so much in this area because they weren't there. When Dr. Barbara Lane wanted to be specific and the information was there, she would be. Here, there was no information to rely upon, and so she was careful in her analysis and did not assert that they were in the disputed area because there was no information to directly ask that a decision below be affirmed. Thank you. Right on the money and three minutes left. Ms. Rasmussen. Good morning. May it please the court, my name is Lauren Rasmussen for the Port Gamble-Sklown and Jamestown-Sklown tribes. You heard my colleague from Suquamish say open marine waters commonly used by all tribes. These are not open marine waters. These are bays and inlets that belong to the upper Skagit tribe to which the upper Skagit tribe needs to survive. This comes back to a critical rule in this case that everybody seems to have forgotten. Transit alone by itself in thoroughfares is not UNA. Decision number one provides at 384 FSEP at 353. This is finding effect 14 that was affirmed by this court and the Supreme Court in passenger fishing vessel. And all of the sub proceedings come after must build upon those rules set forth in the findings of fact by Judge Bolt. So you'll hear these arguments about it's a likely travel route or it can be reasonably affirmed. It seems as though Suquamish is re-arguing the case of upper Skagit v. Suquamish. In that case, that's exactly what they tried to argue. And then the court said first this court ruled for Suquamish and then it changed its mind upon panel re-hearing and the parties argued now wait a minute under Muckleshoot 1, 2, and 3, you have to look at the record in front of Judge Bolt. Let's remember that Dr. Lane's reports were not a list of places where people did not fish. They were a list of places where people did fish. And when she did not include certain places, that lack of inclusion is significant in the case law. So we have Suquamish making the argument essentially it's a formula. I have any evidence of travel, this is on page one of their reply brief, plus the general theories that all tribes traveled means that I get UNA and nobody can challenge me. But the problem is what they're missing is the critical item that's required by finding effect 14. They need evidence that they fished in that particular area. So we go to their statement that this case is consistent with Tulalip versus Suquamish at 794 F3D 1124. Absolutely not. In that case, we're talking about the bays and inlets off of Admiralty Inlet. And yes, Suquamish did not have a specific reference, a geographic anchor point that would put them on those bays and inlets. But what did the court do? The court, the district court started and the Ninth Circuit brought evidence from Judge Dr. Lane who said Suquamish traveled to Whidbey Island to fish. They had an 1846 reference from Achilles de Harley that said Suquamish occupied the west coast of Whidbey Island. They didn't get those bays on the basis of the general statement that all tribes travel or the fact that it was somewhere located between the endpoints A and B. The court looked to specific references, specific pieces of evidence that tied them to that location. And if we put, if we do this in the context of the whole case as a whole, you'll see that the Lummi versus Tulalip case describes this formula aptly. You have to have specific evidence of fishing, travel, and frequent visits to particular areas. You have to have a multifactored analysis. And in this case, just to close, Your Honor, I'd like to say that the Suquamish attorney 40 years ago recognized this point when he got an objection about the vagueness and the lack of evidence of Tulalip, of Suquamish's travel. This is on ER 885 and he said, speaking of Dr. Lane, she reaffirmed it by saying that mere travel through an area would not constitute using the custom fishing places. This is Mr. Stay, the Suquamish's attorney, saying we understand travel alone does not constitute UNA. Thank you. Thank you. I think you have about a Thank you, Your Honor. A few points. First, the nature of the proceeding and the disagreement that we have, strong disagreement we have with the opposing counsel about what happened on April 9th, 10th, and 11th really must be resolved by looking at the hearing transcript. And that's why we've submitted it in its entirety. It's been mischaracterized by opposing counsel. The issue about how the state rebutted what the judge had made a prima facie determination for and why in April 10th the judge only referenced areas 1 and 2 is explained well when one reads the transcript in full and urged the court to do so. Next, Your Honor asked about a specific acre point and that was Rosario Strait a few moments ago. The district court made a reversible error when it strayed from the bolt record itself and developed a new fact. It found a fact that there would be a substantial detour for the Suquamish tribe to move into waters that would be landward or the contested waters from the chain of Fidalgo, Cypress, Sinclair, and Lummi Island. You'll recall the district court said he felt that eight miles would be a substantial detour. Consider, however, that Suquamish also went north to the Frazier River through Harrow Strait. Going north to the Frazier through Harrow adds 40 nautical miles to the trip, but that the district court could accept. So an eight-mile detour towards marine-rich waters in Area 3 and towards friendly villages and relations, being a substantial detour, just the fact that the district court made its own fact-finding that it would be a substantial detour to move approximately eight miles into this waters from Rosario Strait is reversible error. Thank you. Thank you. The case of Upper Skagit, the Port Gamble, Callum, and the Suquamish is now submitted. I thank you all for both the briefing and the very helpful arguments this morning.
judges: Hawkins, McKeown, Foote